Okay, the next case is number 2014-1301 in Re Cuozzo Speed Technologies, LLC. Good morning, Mr. Salmon, when you're ready. Good morning, Your Honor. Thank you. May it please the Court. The Patent Trial and Appeal Board made three errors in its final written decision canceling Claims 10, 14, and 17 of the 074 patent in this first Interparties Review proceeding under the New America Invents Act. Error number one, the Board instituted Interparties Review as to Claims 10 and 14 in violation of the statutory requirement under 35 U.S.C. 314a that the institution decision is limited to information that is in the petition. Garmin challenged Claims 10 and 14 under five separate grounds and the Board denied all of those grounds. Despite this, the Board applied a combination that Garmin suggested. Their theory was that the grounds for Claims 17 necessarily read on Claim 10 also because the problem is that in St. Jude and in the statute, this kind of question about instituting a re-exam is not appealable, right? It's Cuozzo's position that the St. Jude decision and Section 314d, which Your Honor is referring to about the appealability bar of institution decisions, is limited to appeal of the institution decision at institution, like St. Jude, in which St. Jude appealed the institution. So if this were an appeal at institution, it would be barred by the statute? Correct, under St. Jude. Now we are at a final written decision stage under 319, Cuozzo is entitled to appeal the final written decision. We are appealing. It's necessary that the Board had to follow or all statutory jurisdictional requirements were followed to issue the final written decision, otherwise it's a nullity. But I have a hard time reading the statute that way because as I understand the way this works, there's essentially a requirement of finality before you can appeal anyway. So when they say it's not appealable, doesn't that necessarily imply it's not appealable at any point? I mean, that provision would have been unnecessary if it were just designed to defer the appeal question to the point of finality, right? I think if we look at the overall statutory scheme of the Interparties Review Statute, it's clear that Congress intended to prevent interlocutory appeals. There's a statutory mandate that the Board go from an institution decision to a final written decision in one year. If interlocutory appeals were permitted, it completely derails. Interlocutory appeals are not permitted generally. Why would you need to bar an interlocutory appeal, which wouldn't happen anyway? Because of the strong presumption that Congress did not intend to preclude judicial review of agency action. I'm not sure that that's the legislative approach, and I don't think it affects this case particularly, but I thought the purpose of that statutory provision was that if in fact review was denied, you couldn't appeal that at the threshold. If review was denied under St. Jude in this court's ruling, that decision was not appealable. That decision in St. Jude was extended in Procter & Gamble. It's not just one claim or another, but yes or no, we're going to accept post-grant review or we're not. This 314D, the appealability bar, says that the determination under this section is final and not appealable. Yes. The determination that's made under that section is whether the information in the petition meets or the Board determines that the information in the petition meets the reasonable likelihood of prevailing standard. That decision is final and non-appealable. Whether to accept review or not, not the quality of the information. Right. But the final written decision must necessarily subsume that the statutory factors, all of the statutory requirements are met. For example, in Section 311, a patent owner cannot file a petition for inter-parties review. In Section 315, there are other statutory bars to inter-parties filing petitions for inter-parties review. The Patent Office's position is that the Board can institute in violation of any of those statutory factors and that institution in violation of the statutory factors is not reviewable on appeal under 314D. But otherwise, the final written decision was instituted in violation of a statutory requirement. So that would render the final decision ultra-viral. So, I mean, this situation, as Judge Teich mentioned, is one in which Claims 10 and 14 or your independent Claims 17 depends from. So what you're concerned about apparently is the circumstance in which the Board decides that a brand new claim, perhaps a claim that was never raised by government, the Board decides to reach that claim. That is one issue that could be problematic. Under the Director's view of the statute, the Board would have that authority. It would be unreviewable. It would preclude judicial review of that. So whether the Board issues a rejection or institutes as to a claim not raised by Garmin, whether as here they institute on different grounds or under a different rationale, that information was nowhere in the petition. And the statutory scheme is set up to base the decision of the institution on information in the petition. Let's move on to your other points and we'll pursue this if need be with the Director. Yes, Your Honor. Just one other question on that. 319 says that you can appeal a final decision of the Director here. There's no provision for an interlocutory appeal in the statute, is there? No, there's not, Your Honor. So why would you need a provision barring an interlocutory appeal if there's no need for, if there's no possibility of an interlocutory appeal? Because it's the same statutory scheme that was enacted for inter-parties re-examination. In this court decision in In re Hineker, the decision by the Board under the substantial new question, or the decision by the examination branch under the substantial new question of patentability question, was washed clean and replaced by the Board's ultimate decision on patentability. It's the same statutory scheme here. The reasonable likelihood of prevailing decision, that decision alone becomes washed clean at the final written decision. I don't think that's really answered, but why don't you move on to the other question. The second error the Board made in its final written decision was with regard to the construction of the claim term integrally attached. The Board made, the Board's interpretation was based on the examination. You believe that the preferred embodiment that's described in the specification is within the scope of the claims? The preferred embodiment, yes, is within the scope of the claims. Well, and your argument is that this LCD display embodiment that you describe is also within the scope of the claims. Correct, Your Honor. So how does that help you on the obviousness question? If the claims are broad enough to cover the preferred embodiment, and if the preferred embodiment is obvious, don't you lose? Well, we think that the references cited in the institution decision are distinguishable on other grounds. We're not... But how does it help you to include something else within the scope of the claims if what everybody agrees is within the scope of the claims is obvious? It doesn't have to... To lose on obviousness, it doesn't have to be that every embodiment is obvious. It just has to be that some embodiments are obvious and included within the scope of the claims. No? That's right, but we don't agree. We think that the references cited by Garmin or in the petition are distinguishable on other grounds not related to the claim term integrally attached. That's fair enough. You have that argument, but I just don't understand how the claim construction helps you in your argument against obviousness. Because all the claim construction does here, in your view, is broaden the scope of the claims. And broadening the scope of the claims doesn't solve your obviousness problem. But the board... The court has to come to the correct claim construction for the motion to amend practice. The motion to amend is something separate where the patent owner has the opportunity to make a motion to style, substitute claims, and at that... So this claim construction issue is really relevant to the motion for leave to amend because your theory is if the original claim scope under the specification include the LCD embodiment, it's permissible for you to carve that out and submit that as a new claim in the course of the proceeding, right? Because it's not a broadening claim. Correct. It's not a broadening claim, and yes, it's relevant to the motion to amend issue. But we think that the references are distinguishable from the claim... The original claims under the references cited by the board. Kuzo's... The board's construction uses the... Relies on the examinational BRI standard, which is improperly used in this adjudicatory inter-parties review proceeding. The patent office promulgated a rule requiring use of the BRI standard, which is beyond the 2B2. If the board is... It wasn't promulgated pursuant to that grant, wasn't it? Wasn't it promulgated pursuant to the specific grant in the IPR regulations? The patent office's position is that Congress granted an expanded rule-making authority under subsection 360. Right. I mean, you just were trying to say that the BRI rule was promulgated pursuant to 2B2, and I was taking issue with that. That's the patent office's backup position, that if... Well, I mean, my understanding was that the AIA gave specific rule-making power to the patent office with regard to these particular proceedings. There is a list of regulations that the patent office has the authority to promulgate under section 316, all governing the conduct of the proceedings, not expanding the statutory rule-making authority to go from beyond procedural rule-making to substantive rule-making. Well, doesn't it say that they can promulgate rules, for example, to enable the board to determine whether it can meet its test as to whether or not there's a likelihood of showing that one or more of the claims will be invalid? Yes, and the board is... And wouldn't you have to construe the claim before you could reach that decision? Yes, but... In every case? Correct. And the correct rule that the board should be using is the Phillips standard because it's... I'm just... All I'm talking about is what the nature of the grant to the patent office with specific reference to the IPR proceedings. They say, well, we want you to have the power to promulgate some regulations to help determine how the board will make this decision as to whether or not they should proceed. And you have to conduct claim construction to do that. And then I believe the regulations also go on to say regulations to determine the proper scope of discovery for purposes of the IPR. That's correct, Your Honor. And how can you know what kind of discovery you're going to have until you know what claim construction you're going to put on the claims that are in suit? Correct. But the claim construction standard that's required that should be used is the Phillips standard. What I'm trying to get at is whether or not the Congress didn't actually give to the patent office specific rulemaking authority that bears on the question of which claim construction standard you should use. The subsection that the PTO is relying on is 316A4, which when read in whole, talks about rules governing inter-parties review and in conjunction with other proceedings before the office. Reading the legislative history, it was clear Congress intended to give the patent office the authority to manage proceedings that involved, for example, the same patent. If there was an inter-party review involving the 074 patent and a reexamination involving the 074 patent, 316A4, when read completely, gave the patent office the right to... I thought the director's position was a little broader than just A4. I thought in conjunction with its briefs in the Versada case that it was arguing a broader range of authority with respect to the particular claim construction standard you would use. As far as my reading of the briefs goes is that the government focused specifically on 316A4 and only one part of it, not the entire statute. Nevertheless... Well, our duty is to decide as a matter of law, isn't it, what that grant of rulemaking authority to the patent office in 316 was all about. Correct, Your Honor. And whether that broadened the scope of rulemaking authority already given to the patent office under Section 2B2A. So did Congress... Where in 316 do you see that Congress saying that the patent office does not have the authority to select the method of claim construction they will use in an IPR procedure? There's no negative restriction on the PTO in that regard, Your Honor. I see that I'm in my rebuttal time, so I'd like to... Let's hear from the office and we'll save you some time, Mr. Sam. Thank you, Your Honor. Mr. Kelly. May it please the Court. Good morning, Your Honors. In 1980, Congress set out to create an alternative to allow the United States Patent and Trademark Office to reassess the initial patentability determinations it made. And it wasn't until the AIA passed some three decades later that Congress finally achieved that result. And it did two things when it passed the AIA to make clear that those provisions were different than what had happened before. The first is that it made the decision to institute the proceeding entirely unreviewable. Entirely, but it doesn't say that. It does, Your Honor. Well, let me tell you why I think it doesn't say that, okay? I think it says you can't raise it by appeal, but it does not say that it's unreviewable and that there are other statutes in the U.S. Code where they are more specific about it and say that it's totally unreviewable by appeal or otherwise. This statute doesn't include that language. So it seems to me, for example, if the PTO decided, oh, well, we're not going to pay any attention to this nine-month time limit and ten years after the patent issues, we're still going to submit IPR, why isn't mandamus a possible remedy under those circumstances? That's a number of different questions, but I think you get the point. I do, Your Honor. And as for mandamus, I think this Court has already answered that decision in the Procter & Gamble case. But more to your point, Your Honor, the Supreme Court has said in cases like block versus community nutrition that there is a presumption of reviewability, and we agree with you, but that presumption is overcome when the congressional intent is clear. What do you do in the situation, Mr. Kelly, where the board says, you know, Kerman made a mistake, they really should have been looking at Claim 21, and we think Claim 21 is obvious. The board just drops in something that isn't related by way of dependency and proceeds to conclude. Is that decision unreviewable? Yes, that decision is final unreviewable, as are all decisions to institute these proceedings. The focus of this Court's jurisdiction, when there is a final written decision, is on the merits of the patentability issue. The merits of the issue here are quite clear, and what Congress meant, we think, is just as clear. So no matter how far the PTO departs from the statute in initiating the proceeding, there's no way that can ever be reviewed. The decision to institute is final and unreviewable. We would say that, of course, if there's a colorable constitutional argument raised, that could be reviewed because the Supreme Court has been clear in cases like Webster v. Doe that there's a higher standard of clarity required of a statute when the constitutional issue is taken. You're saying that the office position is that since these aspects can't be reviewed after one goes through this entire panoply of argument and appeal and all the rest of it, they remain alive for future litigation because they haven't been finally decided or even explored. My perception was that Congress was aiming for finality of the entirety of the interaction, not to set a few issues here or there aside by chance for further debate. Your Honor, we think what Congress was aiming for was explicitly clear, that what the USPTO is to determine in a final written decision is the patentability of the claims in Quozo's patent. We have done that. And this court's jurisdiction is to review the merits of that decision. Not reviewable at the threshold, but Judge Dike raised an aspect that I hadn't really focused on. It may not be reviewable at the threshold because the consequence of not having an interlocutory appeal is that the issue stays in the case until final decision, which is then reviewable like any other final decision. But Congress wouldn't have to put anything in the statute, Your Honor, if that's what it meant. Well, but they did this, as you know. This was a big point with the bar, with the users of this system, that there be a certain amount of, I was going to say efficiency. There's no way of bringing efficiency into all of this, but at least some sort of finality. Meanwhile, the patent's life is running. These patents have already been granted. And the tactic of keeping a patent tied up in litigation until it expires, we've been seeing now for a good many years. And the hope was to resolve these questions, which had been taken to the courts in the past, to resolve them in the office more efficiently and with as much finality as possible. And, Your Honor, what you're telling us goes in exactly the opposite direction. I don't think so, Judge Newman. What Congress is telling this Court and everybody is that the decision to institute is what's unreviewable. There's no need for us to be litigating about the existence of the proceedings themselves. No, I agree with that. And that's what Congress specifically changed from ex-party reexamination and from inter-party reexamination, where what was off the table was the determination that a substantial new question has been raised. What 314D says is it's not the determination under 314A, as Quozo would like to read the statute, but it's the determination to institute itself that has been taken off the table. Because, Your Honor, we agree with you. What we're trying to get to in this case and in every case is a final disposition as quickly as possible as to the merits of the patentability of the claims at issue. Why does your adversary's position stop you from doing that? He's saying, I wasn't trying to come up here and stop you from proceeding. I came to the end of the proceeding, and as part of my review of the final proceedings, I'm saying you knocked off a couple of claims you shouldn't have because they weren't within the scope of the request. Because, Judge Clevenger, I think your question is focused just on the proceedings as opposed to the patent itself. What we're trying to get to as quickly as possible is the patentability of the claims at issue here. And I think I agree with you. I would have thought that would have led you to say that in a case like this, because 17 depends from 10 and 14, 10 and 14 were implicitly thrown into the case by government. Absolutely, Your Honor. In which case they were in the scope and the argument fails. Yes, if we go around the jurisdictional question, they really have nothing to stand on as to what the board may have arguably done wrong. They did nothing wrong. But to step back a minute. But what's the harm to the process for allowing the review that your adversary wants now, at the end of the game, not slowing anything down, not holding it up, patent office performed on time? The harm to the process, Judge Clevenger, is that we have claims that the agency has concluded should never have been issued. And if they were to win on a procedural challenge about the existence of the institution decision itself, if they were to win on that, then this entire year would have been for naught. The district court staying at... The thing is you can have your cake and eat it, too, by saying at least you don't have to resolve the hypothetical that I'm talking about of a board raising a claim that wasn't even raised in any way, shape, or form by government. Well... And here you can say, look, there's no real reason to fight because 10 and 14 are implicit and 17. Two things about that, Your Honor. The first is that you're correct. In this case, it wouldn't matter. Even if this decision to institute were reviewable, there's really no... Couldn't we wait for the later case before we decide for you that the board can do whatever it wants? No, Your Honor, because this is a jurisdictional question. And although you could step around a statutory jurisdictional question to reach the merits underlying it, we would prefer that you do not because this question is so important to the functioning of our proceedings. I think this court has seen that petitioners, patentees, have been challenging these institution decisions basically in every way they can think of despite the fact... Can I bring you back in that connection to Procter & Gamble? Procter & Gamble, if I recall correctly, was again a case in which there were decisions not to institute, right? Correct. So why does Procter & Gamble in saying that mandamus is unavailable under those circumstances necessarily speak to the question of whether it's available with respect to an erroneous decision to initiate? Well, of course, it doesn't completely dispose of this case or that's the only case we would need to cite. But I think what's interesting about cases like Procter & Gamble and St. Jude is that they demonstrate that the argument that has been presented here today is sort of upside down. Those cases, the agency decision was final. We said no institution, no proceeding. This is it. We're not going to say anything else. That decision is not reviewable. We know that now. And it makes no sense that the decision to institute would be reviewable. Well, I'm not sure that's true because the decision not to institute, I think there's evidence that Congress intended that to be to some extent a discretionary decision. Whereas if the PTO blatantly exceeds its authority in the example that I gave you, instituting an IPR 10 years after the patent issue, it's a difficult thing to say that that shouldn't at some point be a reviewable decision. And it may be, I think you have a good argument that Congress didn't want that to be appealed. But to cut off mandamus, don't you think maybe Congress should have said something a little bit more explicit since it only referred to appeal and not reviewable by any other method the way some other statutes do? I don't think it needed to, Your Honor. And just to correct one thing, the IPRs can exist well into the life of the patent. A PGR would be cut off initially. But what we think is clear is that there shall be no litigation over that issue. The issue that is for this court to decide is whether or not this patent can stay alive so that they can go continue to sue people on a patent that we have demonstrated as clearly as we can should never have been issued in the first place. That's why Congress wants to cut off this litigation. And that's why there's a harm to the system if you can redo the institution decision at the end of the day where you have a final written decision that is clear on the merits. And Judge Dyke, Congress could have simply not put any protections in for patentees. They could have structured the statute any way they wanted to. They could have said every year, every patentee will be subject to a review by the agency. They could have done that. Instead, what they did is they said, here is when these proceedings should take place and there shall be no judicial review of it. It is final and non-appealable. No judicial review. Well, I think they were trying to prevent the abuse of continuing requests of tying up the patents. We'll take that under consideration. Do you want to comment on the broadest reasonable interpretation issue or the other issues raised by Mr. Sandlin? Yeah, of course. As for our rule about the broadest reasonable interpretation approach to construing claims in these proceedings, which were before our office, we think it is entirely consistent with case law from this court for decades telling us to use broadest reasonable interpretation. But those were issued not for actions. We haven't really gotten to the question, have we, of the difference between the appropriateness of such examination before the patent issues and after. You have, Your Honor. This is really the question that's occasioning a lot of debate among users. Well, I understand there's debate principally by patentees that don't want their claims construed in such a way. But the truth is, Your Honor, you have addressed this. Cases like Leo Pharmaceuticals. I keep interrupting you, but this is really the question that's on my mind. We hope, I think all of us, that these proceedings in the office will be a useful substitute, easier, cheaper, quicker than litigation for patents that one can argue about. So why should the, after the patent is issued, why should the result be different in the office than in the court based on how the claims are construed? As for the construction of issued patents, this court's law is clear that we apply the broadest reasonable interpretation to those patents as well. The principal difference between these types of trials and a trial in a district court is that patentees can amend their claims. That is in the statute itself. It's not so easy. It is not so easy, Your Honor, and it should not be so easy. Because having a motion to amend granted by the board means that that's a claim in an issued patent. There is no further examination. There is no search of the prior art. So the board has done something that is entirely reasonable and has put the public on notice. They have told the patentees, if you want to amend your claim, tell us why your new claim is patentable over what you know to be in the prior art. Now, we don't think that's asking too much, particularly where if we were to grant that motion, the claim would become a claim in a U.S. patent. Now, here, the board was clear that the claims cannot be amended because what they're trying to seek is not something that was described in the application. So if they make a motion to amend and they can show that the amended claim is patentable, then they get the amendment. That's the test. In order to make the motion, they have to demonstrate or at least explain. Give us a story as to why it is you think this claim is patentable over the prior art you're aware of. They have to do that, yes. But is that the only thing they have to do? There's an issue of how many claims that they want to amend completely. So even if they could demonstrate to us that there were 500 claims that they thought were patentable, we wouldn't have to. There's a numerical problem, but at least they can have one claim that they can show that it's patentable. Right, and it complies with the statute, so it doesn't enlarge the scope of the claims. It's supported by the application. That is what they have to do, and that is not what was done here. And more importantly, as the board explained in its opinion, the claim here is not supported by the written description, which is clearly a combination of two distinct elements, a speed limit indicator and a speedometer. And the board made the decision up front that they were going to proceed to look at claims 10 and 14 because of the fact that 17 was a dependent claim. They said we're going to exercise our discretion to do so. That was the words. What's the source of that discretion? Your Honor, I would say it's the discretion that's contained within the language of 314A itself, how these decisions are instituted. As long as the board makes a determination that information in the petition demonstrates the standard as to at least one point. Claim not to proceed as well as the discretion to proceed includes the discretion to proceed as to what you want to proceed to. Yes, and in this case, I mean, I think this case presents an example of how that works. It's theoretically possible that the board could have instituted on every single claim in the petition because the prior art is so solid and so clearly teaches what is in Quozo's patent that they probably, there's a showing based on these references as to all of the claims. They could have done what I suggested would have troubled me, which was they could have just reached out and picked a bunch of claims that Garman hadn't even referenced. They could have done that provided, well, if they had done that, it would have been final and non-reviewable. But what the board did here is it didn't just reach out to all the claims. It didn't sit down like a patent examiner with the references in front of it and create new rejections as Quozo seems to argue was done. They did something very, very narrow. They took a dependent claim and they said, okay, if you've made the showing for the dependent claim, you've necessarily made the showing for the independent claim. And if you look at the petition itself, it's clear why they do that because in the petition, the petition right in the dependent claim refers the reader back to how the art reads on the independent claim. So there's really no argument somebody could make that the showing as to the unpatentability of Claim 17 does not necessarily apply by virtue of the petition and 112D to the independent claim from which it depends. There's just no argument a patent attorney could make to that fact. Any more questions for Mr. Kelly? Okay. Thank you, Mr. Kelly. We'll try and figure it out, maybe with Mr. Sandman's help. Thank you, Your Honor. I'd just like to make three quick points. The Patent Office's position is that the final written decision only as to patentability is subject to appeal. The final written decision also encompasses, as the Patent Office noted, the decision on the motion to amend, which can be decided on the merits, whether the claims in the amendment are patentable or procedural grounds, because under the statute, the patentee can only request a reasonable number of substitute claims. So, for example, the Board could say, while these claims might be patentable, we are denying the motion to amend because the number of substitute claims proposed was unreasonable. That makes a difference as to whether it's several or a hundred? Under the statute and the Board's… No, I mean in terms of the argument as to whether this is reviewable. Yes, because that is part of the final written decision, and that is not as to patentability of claims. It is merely a procedural denial on the grounds that there were too many substitute claims. But under the Patent Office's interpretation of the appealability rules, that decision denying a motion just based on the number of claims submitted, regardless of the patentability, is not subject to appeal, yet is included in the final written decision. So they are carving out parts of the final written decision that are appealable and not appealable, even at the final written decision stage. The second point I want to raise briefly is addressing the Patent Office's discussion of the motion to amend. In two years of inter-parties review and post-grant proceedings, including covered business method and post-grant review, there's been zero opposed motions to amend granted. There's been one unopposed motion to amend granted. That is not the same as the right to amend in examination proceedings and re-examination proceedings, and does not justify use of the BRI standard in adjudicatory proceedings like inter-parties review. And finally, to address Judge Clevenger's question, this is not a case where the Board identified a new claim, like Claim 21, to address in the institution decision. But contrary to what the Patent Office alleges, the Board did sit down like an examiner and rejected Garmin's rationale, recombined the references, did their own analysis, for motivation to combine, and then applied that analysis to Claims 10 and 14. That was not in the petition, and that should not have been subject to inter-parties review. Thank you. Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this morning and this afternoon. All rise.